[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 21 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 22 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 24 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 25 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 27 
The questions in this case are, what estate did the grandchildren take under the will in the real estate of the testator? and what interest therein or power over the same was vested thereby in the executors? The plaintiff by his declaration claims the premises in fee. To sustain that claim, it was incumbent on him to show that the fee was vested by the will, in Striker, from whom he derived his title; and for that purpose he introduced and relied upon the will and the record *Page 28 
of the partition in the New-York common pleas, between the devisees of the testator, and the release to Striker by his co-devisees; contending that by the express devise of the real estate to the three grandchildren in fee, and the legal effect and operation of the subsequent limitation and devise over upon it, those grandchildren took estates tail in their respective portions of the premises, which the statute converted into estates in fee simple absolute; and the first question presented to our consideration is, what estate those devisees did take, in their respective shares of the premises devised to them. The first devising clause of the will purports to vest in them the fee; but the subsequent clause provides, that in case any of them should die without lawful issue, the share of the one so dying should be and enure to the others of them, c.; the effect of which, the plaintiff contends, was to reduce the estates in fee under the first devise to estates tail; but as the defendant insists, was to limit thereon, valid contingent remainders in fee in the devisees over, by way of executory devise. The question between them is, whether the devises over, on the given contingency, are valid contingent remainders by way of executory devise to take effect on the death of the first takers without lawful issue then living; or whether the legal effect of the limitation over on such contingency, was to create, or vest, in the devisees respectively, estates tail in the premises devised on them, with remainders in fee; and that question involves the legal signification and construction of the terms "dying without lawful issue," as they are used in this will; whether they are to be understood and taken to refer to the death of the devisees and to mean a want or failure of issue of such devisee, living at the time of the death of such said devisee; or are to be understood and taken to refer to the general failure of issue of the first taker, and to mean a failure of issue by the decease of all the descendants of said first taker, when the whole of his or her issue shall be exhausted and become extinct. The plaintiff contends that the terms "dying without issue" have acquired a legal technical sense, and by the settled rules of construction mean, an indefinite failure of issue, to happen and exist when all the issue and descendants of the decedent shall be exhausted *Page 29 
and extinct, and not till then and, that when those terms occur in a will, the testator must be taken and understood to use them in that sense, unless he, by his will, clearly expresses or indicates a different intention; and that the testator, in this case, has expressed no such intention to use them in a different sense as can control the legal signification and construction of them. The defendant, on the other hand, insists that the contingency of death without lawful issue, as expressed in this limitation, means a failure of issue at the time of the death of the devisee, so dying, and that such must have been the sense of it intended by the testator, as the devise over upon it is to the other grandchildren and to the survivor of them; and in the lifetime of which said three grandchildren the death and failure of issue in the testator's contemplation must happen, or the limitation over in the form directed by him could take effect
[The learned judge here proceeded to discuss at large the above question, and stated as his conclusion upon the fullest consideration he had been able to give the whole matter, that the devise over was to the surviving grandchildren or grandchild on the death of those who should die without lawful issue then living, and must take effect in the lifetime of both or one of them; that the limitation over was valid as an executory devise; and that as the three grandchildren were still living, Striker under whom the plaintiff claimed had no vested estate in remainder or future estate in any part of the premises which could be sold under the judgment against him, or which could pass by a sheriff's deed to the purchaser. This discussion is here omitted because the decision of the court was placed upon the ground yet remaining to be considered. The judge then proceeded.]
But it is contended that conceding the devise over to be valid as an executory devise, and Striker to have had no vested interest in the inheritance, still he had an immediate and present estate and interest in the premises for the term of his life which was saleable on execution, and did pass by the sheriff's deed. In my view of the case any such claim to a present legal estate or interest in the premises, as vested in Striker for life, or otherwise, *Page 30 
must be equally untenable, as his claim to a vested estate or interest for him in the inheritance.
It has been premised that the executors, as I understand and construe the will, on the death of the testator, took a legal estate of and in the lands and devised premises by implication of law as trustees, for the purposes of the will; and the grandchildren were entitled to and took equitable estates only in their respective shares of the estate devised to them, as cestuis que trust thereof. I now proceed to a fuller consideration of that question, and to inquire what estate and interest the executor did take under the will in the premises. The claim of the grandchildren to the premises is under the direct devise to them as qualified by the subsequent limitation over; but the provisions of the will, as I understand them, qualify that devise still further, by a devise to the executors of the legal estate by implication of law for the purposes of the will. The grandchildren were the chief objects of the bounty of the testator, and the whole real estate was to vest ultimately in them, or their lawful issue; but they were not to take an unqualified fee, and to come into immediate possession on the death of the testator. The clear instructions were, that they should have and enjoy the beneficial use and interest of and in the estate, but without the right or power to alienate or incumber the same, until the estate and interest therein should, under and according to the provisions of the will, become and be absolute in the legal owners thereof. Under these views the inheritance was intended to be secured to their lawful issue; and the present beneficial interest vested in them for their lives; but it was not intended that they should have the control over the estate, which the legal title, if vested in them for their lives, would give them. And the testator, therefore, at the same time when, and in the same section of the will in which he devises his real estate to them, takes care to provide and direct, that the said real estate so devised to them, should be under the charge and management of his executors, who are to lease or rent the same, and pay over the rents and profits thereof to his said devisees. But it is made a question whether the clause containing these directions is so framed as to effectuate the testator's intention, and *Page 31 
that question will be first considered. The provision is as follows: "The said real estate so devised to my said grandchildren to be disposed of as follows by my executors hereinafter named, and the survivor of them, or the executors or administrators of such survivor, that is to say: the said real estate shall not at any time hereafter be sold or aliened, but my said executors and the survivor of them, or the executors or administrators of such survivor, shall from time to time lease or rent the same on such terms and for such rents, as they may deem most advantageous to my said heirs, and the rents, issues and profits of the same shall be annually paid by the said executors,c. to my said heirs in equal proportions, and if either of my said heirs or their children lawfully begotten, should choose to occupy any part of my said real estate, he, she, or they shall have a preference to any other applicant, on paying a reasonable rent for the same." These provisions, and the directions of the testator thus placing the real estate under the charge, disposition and management of his executors, with special instructions to them for their government therein, if they are valid in law, and are such as to require the legal estate to be vested in the executors, to enable them to fully perform the duties they enjoin, would amount to a devise to them, the executors, by implication of law, of the legal estate in the premises, to subsist and continue as long as the exigencies of the trust vested in them should require its continuance; but determinable, at all events, on the death of the grandchildren, when the obvious purpose of the trust would cease, and the trust consequently terminate. Upon that construction of the will, the real estate of the testator would, on his death, vest in his executors or trustees, and the grandchildren take equitable estates during the continuance of the trust.
But it is objected that there exists no necessity for the presence of the legal estate, in the executors, to enable them to execute the powers given to them by the will, and that in the absence of an express devise, the court cannot in such case hold a devise to them to be implied by law. The objection virtually admits that if such necessity does exist, such devise will be implied, and unless the clearly expressed intentions and wishes of the *Page 32 
testator are to be disregarded, how can that necessity be denied? The testator connects with the devise of his real estate to his grandchildren an explicit declaration and direction that the said real estate should be under the charge, management and disposition of his executors, that the same should not be sold or alienated, but that his executors and the survivor of them, should lease and rent the same, and pay the rents and profits thereof annually to his said devisees, with power to lease the same to those devisees, at reasonable rents, in case of their application therefor. This order and direction accompanies the devise, is incorporated in it, and makes part of it. The words are, "I give, devise and bequeath, unto my three grandchildren, (naming them,) and their heirs forever, all my real estate, c. The said real estate so devised to my said grandchildren, to be disposed of as follows, by my executors hereinafter named, and the survivor of them, c. that is to say," c. giving the directions contained in the will as before recited. Is not this an express declaration, or a clear indication of the intention of the testator, that the real estate devised to his grandchildren was to be, and should be, under the sole and exclusive charge and management of the executors for the benefit of the grandchildren, and not under their own power, charge or control? That such was his meaning, is believed to be clearly evidenced by the purposes of the arrangement, and the directions he gives to his executors in immediate connection therewith, for the management of the estate. He instructs them in effect, not to sell or alienate the estate, but to lease and let the same, and pay the rents annually to the grandchildren. The purpose and design of the testator, manifestly was to withhold from the grandchildren the power of sale, and thus prevent the alienation of the estate, or any incumbrance thereon, until the inheritance should finally vest in fee simple absolute, under the subsequent limitations in the will, and to effectuate that design, by taking the possession, charge and disposition of the whole real estate out of their hands; and placing the same in the hands of the executors.
These extensive and ample powers over the estate thus vested in the executors, he manifestly contemplated as being to continue in them, probably for the term of their lives, and possibly, *Page 33 
beyond the life of the longest liver of them; for he vests the same in them and the survivor of them, and the executors or administrators of such survivor, thereby rendering the continuance of such possession and power of the executors of and over the estate commensurate in duration with the lives of the grandchildren, and ensuring the preservation of the inheritance for their lawful issue. Now did not the accomplishment of those purposes, and the fulfilment of those trusts by the executors, require that the legal title and estate of and in the devised premises over which those powers were to be exercised, should be vested in them? In what other way than by a trust of the estate and premises in the executors, for the grandchildren, could the power of those grandchildren to sell, alien or incumber their shares and interests therein for their lives be restrained, and yet, they be invested with and secured in the full and exclusive benefit and enjoyment of the profits and avails of the estate itself for the term of their lives? At any rate, may we not safely say that a trust in the executors or some other suitable trustees, was the measure best adapted to those ends? It is evident that such restraint upon the alienation of the real estate by the grandchildren during their lives, was an object of importance in the consideration of the testator, and one which he intended to provide for and secure.
Independently, therefore, of other reasons, the necessity of vesting in the executors the legal title to the estate, in order to enable them to carry that intention into effect, would be a powerful consideration in support of the devise of the premises to them by implication of law. But in addition thereto, the plenary powers given to the executors, and the corresponding duties enjoined upon them, and other indications of the purposes of the will, and of the intentions of the testator, impress me so strongly, that I must consider the call for the title to the real estate in the executors too clear to admit of a serious question or doubt. These executors are invested with the entire and exclusive possession, charge and management of the real estate, with full power, and the corresponding duty, to keep the same in full and active operation; to lease and let the same; receive the rents and pay them over. Must they not, then, upon precedent and *Page 34 
on principle, be adjudged to take the legal estate in the premises as trustees for the purposes of the will? Mere powers, the amplest recognized and allowed by the revised statutes, without the legal estate, might not be adequate to all the exigences of the trust. The testator has done more than confer an authority or power on the executors. He has enjoined upon them duties and active trusts, which were to continue for several lives, and would require the exercise of judgment and discretion, and might, moreover, bring them into conflict with the devisees and heirs at law, and often render necessary or expedient the application of high coercive acts of ownership, and the recourse to remedies confessedly incident to the legal estate, but which an agent acting under powers only, could not adapt or apply.
Take as specimens of the difficulties they might have to encounter, these few familiar cases. Suppose a tenant neglect or refuse to pay his rent; an action against him, or an entry upon him, might be deemed advisable, but which, without the legal estate in the land, or very special covenants and provisions in the lease, would not be available to the executors. So too, a stranger might intrude, or even a grandchild, if vested with the legal title, claim to enter or to hold, in defiance of the executors; and they, if clothed with and acting under the general authority and power conferred upon them by the will, on the construction of them, as being powers, merely, without any right or interest in the land, would be powerless for the redress of the wrong, unless by the aid and co-operation of the legal owners, and in their names. From these and other causes, serious impediments and embarrassments might be perpetually occurring to obstruct and hinder the executors in the full and beneficial performance of the trusts and duties enjoined upon them, if held to possess and act upon powers only, and to have no legal title or estate in the land. Nothing short of a devise to them of the legal estate in the premises, by implication of law, can effectually obviate all defects, impediments and difficulties, and give full effect to the testator's intention.
The right of the grandchildren to a preference over other applicants for the lease of such parts of the devised premises as they or either of them might desire to occupy, is in no respect *Page 35 
in conflict with the intention of vesting the legal estate, by implication of law, in the executors. The privilege thus given to them does not import a right in them to the possession, nor supersede or interfere with the possession of the executors; it merely entitles them to a preference over other applicants in case of a competition between them and others for a lease. They are to take and hold under the executors, and as tenants to them. The same reasonable and just rents are to be required of them as of strangers. The trust and direction to the executors is not to permit the grandchildren to occupy the premises, or to take the rents of the same, as entitled thereto as devisees, but to accept them as lessees and tenants to and under themselves as owners, and trustees of the estate, they paying full rent therefor. I consider this clause as further proof of the testator's intention to vest the legal estate in the executors as trustees. It shows that he was aware that the grandchildren could not, under his will, possess or occupy any part of the devised premises otherwise than as the tenants of the executors, and under them, and that it was therefore expedient to give that authority and direction to the executors in order to entitle the grandchildren to that privilege of priority, and to enable the executors to grant it consistently with their trusts and with perfect safety to themselves.
Is it not apparent then, that the testator must have intended that the executors should retain the possession of the premises during the continuance of the contingency on which the devise over was made to depend? That such was his intention is further manifested by other provisions of the will. The real estate was by the general scheme of the testator's disposition of it, to remain, each grandchild's share, or one-third part thereof, undisposed of, during the lifetime of such grandchild, and the rest and residue of the personal property not specifically bequeathed or otherwise disposed of by the will, was to be managed and conducted by the said executors, c., for the best advantage of the said grandchildren, and paid to them in equal proportions; but the testator provided, nevertheless, that his wife Sarah, notwithstanding any devise in his will contained, should and might during her widowhood use and occupy his *Page 36 
dwelling house and five acres of land adjoining the same, which together with the fences, should be kept in repair by his executors and the survivor of them, c. And further, that his said wife should during her widowhood be paid annually out of the proceeds of his said estate, one hundred pounds; and in case she should marry again, then and from thenceforth one hundred dollars per annum, during her natural life. Now the rents and profits and income of the whole estate were to be received by the executors, and they of course were to defray the expenses of the repairs to the dwelling house, and fences for the widow's reserved domicil, and to pay her annuity out of the same, and to pay the residue only to the grandchildren. Now, the trust to receive and pay over the rents and profits of real estate, was a familiar trust at common law; and the decisions are uniform and clear, that as a general rule, when a testator by his will empowers and requires his executors to receive and apply or pay the rents of an estate, to make repairs, or to pay annuities out of the same, the executors take, by implication of law, the estate in trust over which those powers are to be exercised. That these elements of a trust exist in this will cannot be denied, and no case has been adduced where the same or similar powers were devolved upon the executors, that the devise to them of the legal estate in the premises by implication of law as trustees for the purposes of the will, has not been adjudged to follow.
In this will, the testator by the declared intent to protect temporarily the real estate from alienation of his grandchildren, and in charging the executors with the exclusive power and duty of leasing the same, and with the general superintendence of his said real estate, and the charge of the provision for his wife out of the avails thereof, and by conferring those extensive powers upon the executors and the survivor of them, and continuing the same after the death of the survivor to the personal representatives of such survivor, has shadowed out the trust he had in his contemplation. The formal devise or delegation of the trust to them, is alone, wanting; but no express devise or delegation of trust was indispensably necessary. The law will *Page 37 
imply the formal delegation, where the trust is in substance indicated.
The question now before this court upon this point on this will was also before the chancellor, and was passed upon by him in the case of Striker v. Mott, to which I have had occasion before to refer, in which partition was sought of a part of the real estate of the testator. The chancellor, in that case held, that the executors and such persons as should be the personal representatives of the survivor of them, if they should all die during the continuance of the trust, took by implication of law an estate in trust during the lives of the three grandchildren, and that the grandchildren were each entitled to a contingent or conditional fee, in one-third of the remainder of the estate provided they should have issue living at their death, with cross remainders if either died without issue; that the complainants, therefore, were not entitled to a partition of the present interest in the premises, as that was vested in the executors in trust to pay one-third of the rents and profits to each of the grandchildren. And he held further, as before stated, that they could not claim a division of the future estate in the premises, as it was not yet ascertained that it would belong to them at the determination of the particular estate vested in the executors. This decision goes the whole length of establishing the defence in this cause, and is in point against the plaintiff's claim of title. It sustains the construction of the will to which I incline on both branches of the devise, as well that the executors took by implication of law a legal estate as trustees in trust for the purposes of the will in that behalf, as also, that the limitation over in case of the death of any of the grandchildren without lawful issue of the share of the one so dying, to the others of them, was valid as being a limitation over on a definite failure of issue, and good by way of executory devise.
But the principle of this decision of the chancellor, and the judgment of the common pleas in the case immediately before us, are both equally open to the review and adjudication of this court of appeals upon them; and the considerations offered against them, are to receive our respectful attention before passing upon them. In opposition to the principles of those decisions *Page 38 
it was urged, that the provision and direction of the testator purporting to connect the executors with the administration of the real estate, and to exempt that estate from sale or alienation, are inoperative and void, or if for any purpose valid, are, to the full extent of the validity of them, mere leasing powers, and at most powers in trust, capable of being exercised and fully executed without any estate or interest being vested in the executors, of and in the devised premises for enabling them to execute the same. The charge of invalidity assumes that the restraint upon alienation, and the power given to the executors upon the defendant's construction of the will over the estate, being without limitation of time, are or might be perpetual. But in this assumption of fact the objectors appear to me to err. As I read and understand the will, the restraint upon the sale and alienation of the real estate, and the dominion of the executors over it, are not to extend beyond the lives of the grandchildren, but are to end at latest on their decease, when the purposes of the trust would cease, and the trust consequently terminate. If this construction of the will is correct, that objection to those provisions is altogether unfounded; and if I am right in the views I have taken of those provisions of the will, the objections made to the necessity and use of the trust in the executors must be admitted to be equally groundless. In my view of them, the powers conferred on the executors were not simply leasing powers or powers in trust in the legal sense of those terms, but an active trust intended to operate upon the estate and requiring an interest in the land, and the legal title in the executors to the premises over which they are to be exercised, in order to enable them to execute the same, and fulfil the duties thereby imposed upon them; that consequently, the testator's real estate when his death occurred, by implication of law vested in the executors, and the grandchildren had no legal title thereto, but the beneficial estate and interest only therein; and the plaintiff acquired no right or title to the premises in question by the sheriff's deed, which could enable him to sustain his action.
On the argument, two other grounds of opposition to the defence were urged, which ought not, perhaps, to be passed over *Page 39 
without notice. First, that the defendant Striker was estopped by the partition and release to which he was a party, and his possession and acts under them, from controverting or denying his seisin in fee at the time the judgments against him were docketed, and when the sale was made by virtue of the execution issued thereon; and secondly, that a release ought to be presumed by the executors and trustees of their estate, and interest in the premises to the devisees or to him, Striker, as one of the devisees, and heirs at law of the testator.
The first position is, that the possession of the premises by Striker as tenant in severalty at the time of the recovery and docketing of the judgment against him, claiming to be seized in fee, and exercising acts of ownership by the leasing thereof to tenants under him and otherwise, is evidence of a fee in him which he is not at liberty to gainsay; and moreover, that the admission and averments of a seisin in fee simple as tenant in common, in the partition, to which he was a party, and by the release thereupon executed, given by him to his co-tenants in common, and by them to him, estopped him from denying the seisin in fee which these acts and admissions avowed, or from setting up and insisting upon any title or claim adverse thereto, or in derogation thereof. And secondly, that the possession of the premises in question by the defendant Striker, as the owner thereof, with the privity and consent of the executors and trustees, and their long and open acquiescence therein, were sufficient grounds for the presumption of a release by the executors and trustees, of the estate and interest vested by the will in them, to him.
It was admitted that from the time of the decease of Hopper, the testator, to the time of the partition aforesaid, the defendant Striker was in the occupation of the premises in question, with the concurrence, assent and permission of the said executors and trustees of the testator; and that from and after the said partition, he occupied and possessed the portion of the premises whereof partition was made, allotted to him, including the premises in question in severalty; and it appeared, that on the death of the testator, his said executors in his will named, entered upon the execution of their duties as executors and trustees *Page 40 
under the will, and let and rented, repaired and paid taxes upon, and controlled two lots of ground in Chatham-street, in the city of New-York, parcel of the devised premises, up to about the year 1826; that the said executors are all deceased; that James Striker, one of them, died in February, 1831: that Jordan Mott, another of them, died in January, 1840: and that James Bertine, the other of them, died in December, 1842; and that he left a will by which executors were appointed, who have proved the will, and qualified as executors thereof, and who are now living.
Can these facts, or the partition and releases established by them, and the possession, claim and acts of the defendant Striker under them, bind him to the seisin in fee of the premises in question in himself, which the partition assumed to exist, or preclude him by estoppel or otherwise from setting up and insisting upon the defence he now makes to the title of the plaintiff under the judgment in evidence against him? If I am right in my conclusion, that the executors, by the provision of the will, took the legal estate of and in the devised premises as devisees thereof by implication of law, for the purposes of the will, and the benefit of the grandchildren, a release of that legal estate in these premises from the trustees to Striker, must be shown or presumed in order to make the estoppel, if it exists, available in this action. But the plaintiff has not put himself upon those grounds. He does not base his claim and right to recover upon the defendant's possession of the premises under claim of title, as evidence of a fee in him, nor upon the portition and releases as an estoppel, or the presumption of a release from the trustees to Striker. He introduced the will of Hopper in evidence himself, and has made it the source of his title, and the basis of his claim. The ground he has taken and endeavors to sustain is, that the devise to the grandchildren of the fee, with a limitation over, on the death of the first taker without issue, to others, in the form expressed in the subsequent clause of this will, was, in law, a devise to each grandchild of his share in fee tail, which the statute converted into a fee simple; and that the allegations in the petition of Ann Striker for partition, were consequently true; and the partition valid and effectual, *Page 41 
and the premises in question effectually allotted to and vested in the defendant Striker in severalty in fee; and were consequently bound by the judgment, and passed by the sheriff's deed to him.
How, then, could he take the ground of estoppel, or contend that the admission of Striker in his answer to the petition of Ann Striker, of the truth of her allegations of his seisin in fee of the one third of the devised premises, is binding upon him? That such was the tenure of such one-third part of the premises, when the documents given in evidence by him, namely, the will and the deed of release, showed the truth of the fact; and the actual tenure by which he, Striker, held the same. But again, the alleged admission was not of a fact, but of a conclusion of law. The will itself, and the clauses it contains, are not, and never were, as matters of fact, in dispute; but the construction of those clauses, and the estate and interest taken by the devisees under them, upon which the controversy turns, are questions of law. The grandchildren, at the time of the partition, doubtless supposed the devise of the real estate to them to have the legal effect to vest in them the estate in equal shares, as tenants in common, in fee simple absolute, and on such erroneous supposition they acted in the partition they assumed to make. But could that mistake of the law be urged and used against either party, to estop him from afterwards claiming and asserting his rights under the true exposition of the will? Can the plaintiff now avail himself of such mistake by the defendant of his true title, as an admission conclusive upon him that such mistaken title was, and is in fact his true title to the land, in face of the will, to which both refer as the source of title? The will was before the plaintiff when he took his ground and framed his pleadings, and when he went to trial. The partition professed to be of premises devised by the will of the petitioner and her co-devisees, and the releases expressly referred to the will as the source of the title of the parties to the undivided premises, of which the partition was made, and the plaintiff must abide by the true construction of the sense and meaning of the devises of the will, and could not and cannot claim that Striker is to be bound by his mistake of the conclusion of law, *Page 42 
from the facts of the devise and the words used therein, or estopped from claiming under it according to the true exposition of its meaning.
But, second, the plaintiff insists that a release is to be presumed from the trustees to said Striker of the legal estate in the premises, vested by the will in them. No deed of release, or writing with seal, is shown, purporting to be a transfer of any such title or right, nor any proof offered to show that any such deed ever existed. The presumption of the fact of such release is supposed to result from the possession and acts of Striker and the acquiescence of the trustees therein, with the absence of all interference or interruption, and all claim to interfere with such possession by them, as to the premises embraced in the partition, from the time of the partition; and as to the residue of the premises, from the time of the death of the testator, in the year 1819, to the present time. Such a release or conveyance would be a breach of trust in the executors. It would be an open and palpable violation of the obligations they were under as executors and trustees in the premises, inconsistent with their duty, wholly unauthorized by the authority conferred upon them, and in direct contravention of the declared intentions and purposes of the testator. Presumptions are indulged and allowed when the fact to be presumed is consistent with the duty, trust or power vested in the releasor, and tends to subserve the purposes of justice. But when the act would be unauthorized by the trust, or contrary to the duty of the party assuming the power, no such presumption can be admitted.
These trustees had no authority to release or transfer the title conferred on them to the grandchildren. They were authorized to lease or let the real estate, or any part thereof, to any of the said grandchildren, and a lease from them to Striker might have been presumed; but as respects such a lease in the absence of proof of the term demised, the presumption would be of a lease from year to year, which, of course, would be of no avail to the plaintiff. A release of the trust estate cannot be intended or deemed to exist. The judgment of the New-York common pleas should be affirmed. *Page 43