FRANKLIN LE ROY HATHAWAY, as Executor, etc., of
LUTHER HATHAWAY, Deceased, Respondent, v. MARY
ANN HATHAWAY, DELIA M. HATHAWAY, ELIZA-
BETH R. RIVENBURG and LORENZO H. RIVENBURG,
Appellants, Impleaded, etc.

37   265
134a 214

37h      265
j 71 AD 1349

*Will — construction of — what words are sufficient to create a trust.*

The plaintiff's testator, after bequeathing all his personal estate remaining after the payment of his debts, to his wife and seven children, gave and bequeathed " unto my wife Mary Ann Hathaway as her dower in full the use or proceeds, after paying the necessary expenses of keeping the same in repair, of all my real estate, situated in the town of Augusta, during her natural life, and upon the death of my wife said real estate shall be sold and the proceeds divided equally between the following of my children here named, * * * to be theirs, their heirs, assigns, executors, forever. I hereby appoint my son Franklin Leroy Hathaway as sole trustee and executor, with full management of real estate to final sale, of this my last will and testament."

*Held*, that under the will the title to the real estate was vested in the trustee, and that the widow did not take a life estate in the land but simply a right to receive the net rents and profits therefor from the trustee.

Appeal from a judgment, entered on the decision of the Oneida Special Term in an action brought for the construction of a will.

On the 16th of December, 1882, Luther Hathaway died leaving a last will and testament dated September 19, 1882, which was admitted to probate March 19, 1883. By the first clause of said will he bequeathed all of his personal estate, after the payment of his debts and funeral expenses, to his wife and seven children in equal shares. Apart from the attestation clause the rest of the will is in these words: "Second. I give and bequeath unto my wife Mary Ann Hathaway as her dower in full the use or proceeds, after paying the necessary expenses of keeping the same in repair, of all my real estate, situated in the town of Augusta, during her natural life, and upon the death of my wife said real estate shall be sold and the proceeds divided equally between the following of my children here named: Henry H. Hathaway, William W. Hathaway, A. Jay Hathaway, F. Leroy Hathaway, Edwin E. Hathaway, Delia M. Hathaway, Ann Hathaway (now Mrs. Dixon), Elizabeth R. Hathaway (now Mrs. Rivenburg), to be theirs, their heirs, assigns,

executors, forever. I hereby appoint my son Franklin Leroy Hathaway as sole trustee and executor, with full management of real estate to final sale, of this my last will and testament, hereby revoking all former wills by me made."

Prior to the death of the testator, his farm, which consisted of 110 acres, worth about $9,000, had been leased to the defendant, Lorenzo Rivenburg, for a term ending March 1, 1884. Upon the termination of this lease Mr. Rivenburg surrendered possession of the farm to the widow, who, after probate of the will, had duly elected to accept, as her dower in full, the testamentary provision made for her, and thereafter she continued in possession, claiming the right thereto and to the use and occupation of said farm during her natural life. After the first of March, 1884, and before the commencement of this action, the plaintiff, as executor and trustee under his father's will, demanded possession of the widow and said Rivenburg, who had become her tenant, which was refused. The plaintiff has never had the possession or management of the farm. The complaint asks for a construction of the will and for an accounting. The answer admits the material facts, but insists that the widow took a life estate under the will, and that she is entitled to possession and control during her natural life.

The Special Term held that certain express trusts were created by the will, formulated the same and sustained the general theory of the plaintiff that he, as trustee, was entitled to the exclusive possession, management and control of the farm. From the decree entered accordingly, Mary Ann Hathaway, Delia M. Hathaway, Elizabeth R. Rivenburg and Lorenzo Rivenburg (no other defendant having answered), bring this appeal.

*C. D. Adams*, for the appellants.

*A. N. Sheldon*, for the respondent.

VANN, J.:

A gift in lieu of dower and acceptance of same is in effect a contract whereby the widow becomes a purchaser of the property left to her by the will in consideration of relinquishing her dower. (*Isenhart* v. *Brown*, 1 Edw. Ch., 411.) She must, however, accept it in the form in which it was given, and subject to such burdens

as the will prescribes. She is a purchaser of the gift as described by the testator, which cannot be enlarged by construction. (*Re Benson's Accounting*, 96 N. Y., 499; *Chamberlain* v. *Chamberlain*, 43 id., 424, 442.) As said by the court in the case last cited: "By accepting this provision, she assents to all the terms and conditions annexed to it, and yields every right inconsistent with such terms and conditions." If, therefore, a trust covering the real estate was created by the will, the widow, although taking as a purchaser, takes subject to the trust.

· No particular form of words is necessary to create a trust. Any language clearly showing the intention of the testator will have that effect. Whether the word "trust" is or is not used, while a circumstance to be attended to, is not controlling. (Hill on Trustees, 101; Story's Eq., §§ 972, 1068; *Brewster* v. *Striker*, 2 N. Y., 19.)

A direct gift or devise is not essential, as the declaration of an intent that a person, whether named as trustee or not, should have a management or control to which the legal estate is necessary, has the same effect. (Fletcher on Trusts, 1–9; *Trent* v. *Hanning*, 7 East, 97, reversing 4 Bos. & Pul., 116; *Doe* v. *Homfray*, 6 Ad. & El., 206.) "If a testator simply appoint a person his executor and trustee, it seems the latter word is not so exclusively applied to real estate as to carry by implication to the executor a devise of the testator's real estate, but if the testator direct certain acts to be done by the trustee, which belong to the owner of the freehold, such a devise will be implied." (Lewin on Trusts [5th ed.], 177.)

In *Trent* v. *Hanning* (7 East, 97) the entire will was as follows: "I, John Trent, do hereby give unto my wife £200 per annum during her natural life in addition to her jointure, my just debts being previously paid; and I do give unto my two younger children £6,000 each, to be paid when they severally come to the age of twenty-one; and I do appoint J. Hanning, W. Hanning and C. Phipps as trustees of inheritance for the execution hereof." It was held that the trustees took the legal title to the testator's lands.

Where there are direct words of devise, followed in a later clause by words explaining and modifying the same, they should be read together, and due effect given to the whole. (*Tenny* v. *Moody*, 3 Bing., 3.)

In *Anthony* v. *Rees* (2 Crompt. & Jer., 75) a testator devised a house and lot to Mary Rees, with remainder on her death without issue to her brother. By a later clause he gave to his wife an annuity to be paid out of his real estate, and finally he appointed two persons " as trustees to look in that justice should be duly administered between the said parties." It was held that the legal estate vested in the persons named as trustees.

It is conceded that the testator intended to give his wife a life estate, or to create a trust for her benefit during life. The language used, while consistent with a trust, is inconsistent with a life estate. The material part is as follows : " I give  * * *  unto my wife  * * *  the use or proceeds, after paying the necessary expenses of keeping the same in repair, of all my real estate  * * *  and upon the death of my wife said real estate shall be sold and the proceeds divided equally between the following of my children.  * * *  I hereby appoint my son  * * *  sole trustee and executor, with full management of real estate to final sale."

Thus by appropriate and even technical words a trustee is appointed. There cannot be a trustee without a trust. He is the executive officer of a trust. His office begins and ends with the trust, and cannot exist without it. The appointment of a trustee, therefore, shows that the testator intended to create a trust and that he did not intend to create a life estate. While this alone is not controlling, it is significant and points strongly toward a trust. But, in addition to the appointment of a trustee, and, in the same sentence, his duties are specified. He is given " full management of the real estate to final sale," which cannot take place until after the death of the widow.

Can one person, of adult age and sound mind, have a life estate and another have the full management of that estate during the entire term ? Management implies control and full management implies full control. As said by the court in *Watson* v. *Cleveland* (21 Conn., 538, 542), " by the management of the estate " is meant " the controlling of the property to the end that income and profit should be derived from it, such as leasing it, investing, securing, collecting," etc. Each of two persons cannot have control at the same time. If there is a life tenant she has control, absolutely, during her life ; yet, the will gives full control or management to a

trustee, *eo nomine*, during that period.　There can be no life estate in one with full control of that estate in another.

It is further provided that upon the death of the widow the real estate is to be sold and the proceeds divided equally among the children.　No title to the land is given to the children after their mother's death, but only the right to the proceeds of the land when sold.　In whom is the title to the land after the widow's death and before it is sold?　In whom is the fee during the widow's life subject to her rights?　By whom is the land to be sold and the proceeds divided?　It is impossible to satisfactorily answer these questions upon the theory of a life estate, while the answer is easy and natural upon the theory of a trust.　The trustee has the legal title until the death of the widow, when he is to sell the land and divide the proceeds.　The rest of the will, so far as it is material upon this subject, is a gift to the wife during her life of the " use or proceeds " of the real estate after paying the necessary expenses of keeping it in repair.　" Use " is the only word in the entire will that gives color to the theory of a life estate, and standing alone with no words in the same sentence to modify its meaning, or in other parts of the will to reflect light upon it would doubtless have the effect claimed for it.　(*Monarque* v. *Monarque*, 80 N. Y., 320.) " Use and proceeds," however, have a different meaning from " use and occupation," as the latter phrase necessarily implies possession while the former does not, hence " use " may or may not imply possession according to the connection, and is consistent either with a trust or with a life estate.　" Proceeds " is used twice in the same sentence, and when used in connection with the sale of real estate, it evidently means the avails of the real estate when sold.　If it is employed in the same sense in connection with the " use " of real estate, it means the avails, rents or profits thereof When the testator directed that the widow should have the use or proceeds after paying the necessary expenses of keeping in repair, is it not apparent that he meant she should have the net avails of the farm, or the rents and profits after paying for repairs?

This direction, when construed with the express appointment of a trustee " with full management of real estate to final sale," and with the instruction to sell and divide upon the death of the widow, leaves no reasonable doubt as to the meaning of the testator.　He

means that the trustee should take the legal title in trust to manage the farm and pay over the "proceeds," after deducting the necessary expenses, to his wife during her life, and upon her death to sell the fee and divide the "proceeds" among the children. When thus construed, every part of the will speaks and is in harmony with every other part. The widow has the net proceeds without the care or trouble of possession or management, as is desirable for a lady of mature years, while her son, the trustee, has the possession and control without which he could not manage the real estate as directed by his father. On the other hand, by holding that there is a life estate, those provisions are silent and inconsistent with such construction. It is unnecessary to consider the rule that the last provision in a will is presumed to express the mature intent of the testator, and is to control on a question of construction, or that subsequent clauses are not incompatible with or repugnant to prior clauses where they take effect as qualifications of the latter. These rules should not be applied except in a case of necessity, where there is an actual conflict between the earlier and later portions of the instrument.

As the legal title was in the trustee, the right to possession followed that title, and, upon the expiration of the lease given by the testator, the plaintiff had the right to possession and management to the exclusion of the equitable tenant for life. (Hill on Trustees, 673, 1429; Lewin on Trusts, 236; *Brewster* v. *Striker*, 2 N. Y., 19, 31.)

As no other question is presented by the appellants for our determination, the judgment of the Special Term should be affirmed, with costs.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.